IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DOYON UTILITIES, LLC,                )
                                     )
            Plaintiff,               )
                                     )
      v.                             )      No. 19-199C
                                     )      (Judge Lettow)
THE UNITED STATES,                   )
                                     )
            Defendant.               )


<u>MOTION TO DISMISS</u>


                                    JOSEPH H. HUNT
                                    Assistant Attorney General

                                    ROBERT E. KIRSCHMAN, JR.
                                    Director

                                    STEVEN J. GILLINGHAM
OF COUNSEL:                         Assistant Director

BRANDON COGSWELL                    STEVEN C. HOUGH
Senior Counsel                      Trial Attorney
DLA Counsel – Energy                Commercial Litigation Branch
8725 John J. Kingman Road, Suite 1565    Civil Division
Ft. Belvoir, VA  22060              United States Department of Justice
                                    PO Box 480
                                    Ben Franklin Station
                                    Washington, DC  20044
                                    Telephone: (202) 507-6030
                                    Facsimile:  (202) 305-7644
                                    steven.c.hough@usdoj.gov

September 6, 2019                   Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

STATEMENT OF THE CASE............................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.    Doyon May Not Recover Interest Because Interest On Borrowings Is Unallowable ................................................................................. 4

II.    Doyon May Not Recover Interest Because The Government Has Sovereign Immunity................................................................................ 6

III.    Doyon May Not Recover Interest Because Its Change Theory Fails To State A Claim, And Its Constructive Change Theory Lacks Jurisdiction And Fails To State A Claim .............................................. 13

    A.    Doyon's Change Claim Must Be Dismissed ........................... 13

    B.    Doyon's Constructive Change Claim Must Be Dismissed ...................... 15

CONCLUSION.............................................................................................................18

TABLE OF AUTHORITIES

CASES

*AAB Joint Venture v. United States,*
   75 Fed. Cl. 414 (2007) ............................................................................ 16

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................... 3, 17

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................ 3

*Bell v. United States,*
   404 F.2d 975 (Ct. Cl. 1968) ........................................................ 7, 8, 9, 11

*Crow Creek Sioux Tribe v. United States,*
   900 F.3d 1350 (Fed. Cir. 2018) ................................................................ 3

*Cygnus Corp. v. United States,*
   63 Fed. Cl. 150 (2004) ..................................................................... 14, 15

*DaimlerChrysler Corp. v. United States,*
   442 F.3d 1313 (Fed. Cir. 2006) ................................................................ 3

*Dimare Fresh, Inc. v. United States,*
   808 F.3d 1301 (Fed. Cir. 2015) ................................................................ 3

*Easter v. United States,*
   575 F.3d 1332 (Fed. Cir. 2009) .............................................................. 11

*Energy Nw. v. United States,*
   641 F.3d 1300 (Fed. Cir. 2011) ......................................................... 6, 11

*England v. Contel Advanced Sys., Inc.,*
   384 F.3d 1372 (Fed. Cir. 2004) ................................................................ 6

*Envtl. Tectonics Corp. v. United States,*
   72 Fed. Cl. 290 (2006) ........................................................................... 14

*Gevyn Const. Corp. v. United States,*
   827 F.2d 752 (Fed. Cir. 1987) ................................................................ 11

*Info. Sys. & Networks, Corp. v. United States,*
   81 Fed. Cl. 740 (2008) ........................................................................... 16

*Ingalls Shipbuilding, Inc. v. Dalton,*
   119 F.3d 972 (Fed. Cir. 1997) .................................................................. 4

*J.D. Hedin Const. Co. v. United States*,
   456 F.2d 1315 (Ct. Cl. 1972) ..................................................................................... 7

*Kaman Aircraft Corp.*,
   ASBCA No. 10141, 66-1 BCA (CCH) ¶ 5581, 1966 WL 419 (May 18, 1966) .............. *passim*

*Lawson v. United States*,
   176 F.2d 49 (D.C. Cir. 1949) ..................................................................................... 8

*Library of Cong. v. Shaw*,
   478 U.S. 310 (1986) ................................................................................................. 6

*Lockheed Corp. v. Widnall*,
   113 F.3d 1225 (Fed. Cir. 1997) ................................................................................. 4

*Mar-Pak Corp. v. United States*,
   203 Ct. Cl. 718 (1973) ............................................................................................. 8

*N.Y. Shipbuilding Co.*,
   ASBCA No. 16164, 83-1 BCA (CCH) ¶ 16534, 1983 WL 41922 (May 11, 1983)............. 8, 10

*Purvis v. United States*,
   No. 207-68, 1980 WL 20824 (Ct. Cl. June 30, 1980)............................................... 14

*Rainier, Inc.*,
   ABCA No. 1733, 4 CCF (CCH) ¶ 60,519 (June 14, 1948) ................................... 9, 11

*Santa Fe Engineers, Inc. v. United States*,
   818 F.2d 856 (Fed. Cir. 1987)................................................................................. 16

*Servidone Const. Corp. v. United States*,
   19 Cl. Ct. 346 (1990) ....................................................................................... 4, 5, 7, 8

*Servidone Const. Corp. v. United States*,
   931 F.2d 860, 863 (Fed. Cir. 1991)..................................................................... 5, 7, 8

*Singer Co. Librascope Div. v. United States*,
   568 F.2d 695 (Ct. Cl. 1977) .................................................................................. 16

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*,
   672 F.3d 1041 (Fed. Cir. 2012)................................................................................. 3

*Tomahawk Const. Co.*,
   ASBCA No. 45071, 94-1 BCA (CCH) ¶ 26312, 1993 WL 325547 (Aug. 18, 1993) ............... 5

*United States v. Mescalero Apache Tribe*,
   518 F.2d 1309 (Ct. Cl. 1975) ................................................................................... 6

*United States v. Thayer-W. Point Hotel Co.*,
   329 U.S. 585 (1947) .................................................................................. 8, 15

*United States v. Wade*,
   152 F.3d 969 (D.C. Cir. 1998) ........................................................................ 8

*Wichita Engineering Co.*,
   ASBCA No. 2522, 1955 WL 8899 (Dec. 16, 1955) ........................................ *passim*


STATUTES

28 U.S.C. § 2516 ................................................................................................ 8

41 U.S.C. § 7103 ............................................................................................. 16


RULES

RCFC 12(b)(1) .................................................................................................. 3

RCFC 12(b)(6) .................................................................................................. 3


REGULATIONS

DFARS § 252.243-7001 .................................................................................... 5

FAR § 2.101 ................................................................................................... 14

FAR § 31.000 ................................................................................................... 5

FAR § 31.205-20 ...................................................................................... *passim*

FAR § 52.241-7 .............................................................................................. 12

FAR § 52.243-1 ........................................................................................ *passim*

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DOYON UTILITIES, LLC,                    )
                                         )
                    Plaintiff,           )
                                         )
            v.                           )        No. 19-199C
                                         )        (Judge Lettow)
THE UNITED STATES,                       )
                                         )
                    Defendant.           )

## MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of

Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court

dismiss the complaint filed by plaintiff, Doyon Utilities, LLC (Doyon), for lack of subject matter

jurisdiction or for failure to state a claim upon which relief can be granted.

## STATEMENT OF THE CASE

On September 28, 2007, Doyon entered into a contract with the Defense Energy Support

Center, now known as the Defense Logistics Agency Energy (DLA Energy), to provide electric,

natural gas, water, and wastewater utility services to Joint Base Elmendorf-Richardson (JBER) in

Anchorage, Alaska.  Compl. ¶ 6; *see* Ex. A.  On July 18 and August 2, 2011, Doyon and DLA

Energy executed supplemental agreements (*i.e.*, bilateral contract modifications) authorizing

Doyon to construct a landfill gas (LFG) power plant on JBER.  Compl. ¶¶ 12, 16.

On September 12, 2011, Doyon entered into a separate contract with the Municipality of

Anchorage, to which the Government was not a party, to purchase LFG for the JBER power

plant.  Compl. ¶ 17.  Pursuant to this contract, Doyon began paying the Municipality of

Anchorage for LFG on May 29, 2013.  Compl. ¶ 24.  To finance its purchase of LFG, Doyon

decided to borrow money through a debt facility at Toronto Dominion Bank, which charged

Doyon an interest rate of 5.03%.  Compl. ¶¶ 30, 39.

Subsequently, on December 29, 2014, Doyon and the Government executed a supplemental agreement permitting Doyon to pass-through its LFG costs to the Government. Compl. ¶ 36.  On December 31, 2014, Doyon submitted a $3,718,736 invoice for LFG purchased between November 27, 2012 and September 30, 2014.  Compl. ¶ 37.  The Government paid this invoice in full less than two weeks later on January 9, 2015.  Compl. ¶ 37.

On April 23, 2015, Doyon submitted a $178,096 request for equitable adjustment for interest costs that it incurred on the debt facility between June 28, 2013 and January 9, 2015 to finance its LFG purchases.  Compl. ¶¶ 40–41.  The contracting officer denied this request for equitable adjustment on April 6, 2017.  Compl. ¶ 42.  Doyon then submitted a $178,096 certified claim for reimbursement of its interest costs on October 9, 2017, which the contracting officer denied on February 7, 2018.  Compl. ¶¶ 43–44; *see* Ex. B.

Doyon commenced this action by filing its complaint on February 4, 2019.  It seeks "reimbursement in the amount of $178,096" for interest on borrowings costs "totaling $178,096 [that Doyon incurred] because of its use of the debt facility."  Compl. ¶¶ 40, 43, 45–47.  Notably, Doyon does not seek to recover any of the cost of the LFG itself, for which Doyon acknowledges that it "received payment in full on 9 January 2015."  Compl. ¶ 37.  Thus, Doyon is seeking to recover only its interest on borrowings in this action.

<u>ARGUMENT</u>

The Court should dismiss the complaint for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted because Doyon's claim for interest on borrowings seeks to recover unallowable costs, is barred by sovereign immunity, and otherwise fails to state a claim upon which relief can be granted or over which the Court can exercise subject matter jurisdiction.

When considering a motion to dismiss—whether for facial lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) or for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6)—the Court "must take all of the *factual* allegations in the complaint as true," but need not accept "allegations [that] are *conclusory*." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (emphasis added) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007)); *see Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1354–55 (Fed. Cir. 2018) ("[T]he Supreme Court's 'plausibility' requirement for facial challenges to claims under Rule 12(b)(6) . . . also applies to facial challenges to subject-matter jurisdiction under Rule 12(b)(1)."). A complaint must offer more than "labels and conclusions," and will not "suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (alterations omitted) (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted). Thus, to survive a facial motion to dismiss pursuant to RCFC 12(b)(1), a complaint must "allege sufficient facts to establish the court's jurisdiction," the basis of which must be "affirmatively and distinctly set forth." *DaimlerChrysler Corp. v. United States*, 442 F.3d 1313, 1318–19 (Fed. Cir. 2006). Similarly, "[t]o survive a motion to dismiss [pursuant to RCFC 12(b)(6)], a complaint must . . . 'state a claim of relief that is plausible on its face,'" and its "factual allegations must be enough to raise a right to relief above the speculative level." *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1062 (Fed. Cir. 2012) (alterations omitted) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 555). In considering the motion, the Court is "not limited to the four corners of the complaint" and "may also look to matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record." *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (alterations omitted) (internal quotation marks omitted).

Doyon appears to allege that it may be awarded interest on borrowings because either the supplemental agreement authorizing Doyon to construct an LFG power plant or the supplemental agreement permitting Doyon to pass-through its LFG costs "was a change [in] the general scope of the contract, resulting in an increase in the cost of performance . . . for which [Doyon] is entitled to an increase in the Contract Price" pursuant to the contract's changes clause.  Compl. ¶¶ 45–46 (alterations omitted) (internal quotation marks omitted).  And, in the alternative, Doyon appears to allege that it may be awarded interest on borrowings "because the Contracting Officer constructively changed the Contract requirements [by] knowingly requiring that [Doyon] make use of a debt facility in order to purchase LFG."  Compl. ¶ 47.  Doyon may not recover interest on borrowings on any of these grounds, and the Court should dismiss its complaint.

I.    Doyon May Not Recover Interest Because Interest On Borrowings Is Unallowable

Whether based upon an actual or a constructive change to the contract, Doyon's claim for interest fails because interest on borrowings is an unallowable cost under the Federal Acquisition Regulation (FAR) and the Defense Federal Acquisition Regulation Supplement (DFARS).

The FAR's interest and other financial costs section provides that "[i]nterest on borrowings (however represented), bond discounts, [and] costs of financing and refinancing capital . . . are unallowable" costs.  FAR § 31.205-20, 48 C.F.R. § 31.205-20.  "By its terms," this provision "applies to interest on borrowings.  A borrowing is generally defined as a loan." *Lockheed Corp. v. Widnall*, 113 F.3d 1225, 1227 (Fed. Cir. 1997) (internal quotation marks omitted).[1]  The FAR's contract cost principles and procedures explain that this no-interest

---

[1]  *Widnall*, *supra*, and *Servidone Construction*, *infra*, considered section 15-205.17 of the former Defense Acquisition Regulation (DAR), which "was superseded" by the FAR in 1984. *Widnall*, 113 F.3d at 1226 n.3.  However, "[t]he corresponding DAR provision[]," DAR § 15-207.15, is "identical to the FAR provision[]," FAR § 31.205-20, "in all relevant aspects."  *Ingalls Shipbuilding, Inc. v. Dalton*, 119 F.3d 972, 975 (Fed. Cir. 1997).

provision applies to "[t]he pricing of contracts, subcontracts, and modifications to contracts and subcontracts whenever cost analysis is performed" and to "[t]he determination, negotiation, or allowance of costs when required by a contract clause," FAR § 31.000, and the DFARS' pricing of contract modifications clause provides that "[w]hen costs are a factor in any price adjustment under this contract, the contract cost principles and procedures in FAR part 31 . . . apply," DFARS § 52.243-7001, 48 C.F.R. § 252.243-7001.  In other words, "the Pricing of Adjustments clause (DFARS 52.243-7001) . . . makes standard cost principles, such as FAR 31.205-20, applicable to equitable adjustment pricing." *Tomahawk Const. Co.*, ASBCA No. 45071, 94-1 BCA (CCH) ¶ 26312, 1993 WL 325547 (Aug. 18, 1993).

Here, Doyon seeks to recover interest that it incurred "to borrow money through a debt facility to keep its operations funded."  Compl. ¶ 30; *see* Compl. ¶ 40 (Doyon "incurred finance charges totaling $178,096 because of its use of the debt facility.").  Specifically, Doyon "borrowed a total of $3,718,736 from Toronto Dominion Bank . . . at an interest rate with two components:  a Revolver Rate of 1.75% plus the 30-day LIBOR rate, and a Swap Rate of 3.28% minus the 30-day LIBOR rate" and "paid a resulting fixed interest of 5.03%."  Compl. ¶ 40.  However, Doyon's contract with the Government contains the DFARS' pricing of contract modifications clause, so the FAR's interest and other financial costs provision applies to the pricing of modifications and adjustments under its contract.  *See* Ex. A at 54.  Thus, FAR part 31's cost principles and procedures make Doyon's costs of "interest on borrowings" unallowable, precluding its claim for interest.  *See Servidone Const. Corp. v. United States*, 19 Cl. Ct. 346, 383 (1990) ("The applicability of such a provision in the present case conclusively precludes recovery of interest."), *aff'd*, 931 F.2d 860, 863 (Fed. Cir. 1991) ("Servidone's contract specifically bars recovery of this interest.").

5

Accordingly, the Court should dismiss the complaint in its entirety because Doyon's only claim—for interest on its borrowings—seeks to recover an unallowable cost.[2]

II.    Doyon May Not Recover Interest Because The Government Has Sovereign Immunity

Even if Doyon's claim for interest on borrowings were for an allowable cost—which it is not—it still must be dismissed because it is barred by sovereign immunity.

"As sovereign, the United States, in the absence of its consent, is immune from suit." *Library of Cong. v. Shaw*, 478 U.S. 310, 315 (1986).  Thus, "in the absence of specific provision by contract or statute . . . interest does not run on a claim against the United States."  *Id.* at 317. Potential waivers of sovereign immunity "must [be] construe[d] . . . strictly in favor of the sovereign," and "[t]he no-interest rule provides an added gloss of strictness."  *Id.* at 318; *see United States v. Mescalero Apache Tribe*, 518 F.2d 1309, 1315 (Ct. Cl. 1975) ("[S]overeign immunity . . . applies to claims for interest against the United States.").  Accordingly, the United States Court of Appeals for the Federal Circuit and its predecessors have held that "the government has sovereign immunity against recovery of interest charges a contractor undertakes as part of either financing performance . . . or staving off creditors."  *Energy Nw. v. United States*, 641 F.3d 1300, 1313 (Fed. Cir. 2011); *see England v. Contel Advanced Sys., Inc.*, 384 F.3d 1372, 1379 (Fed. Cir. 2004) (Contractor could not "recover the interest it paid on the

---

[2]  Doyon's contract with the Government provides "that the Tariff Rate component of the Fixed Monthly Charge identified in Section B.4 [o]f this Contract is exempt from Cost Accounting Standards (CAS) in accordance with 48 CFR 9903.201-1(b)(5) and the requirements of FAR Part 31."  Ex. A at 6.  However, that exemption does not extend to the supplemental agreement authorizing Doyon to construct the LFG power plant, the supplemental agreement permitting Doyon to pass-through its LFG costs, or the interest that Doyon incurred on its borrowings because those costs are not part of the fixed monthly charge under its contract.  *See* Ex. C at 2 ("Language in the contract preamble is modified to clarify the limitations of the CAS exemption and applicability of FAR Part 31.").

extra money it was forced to borrow as a result of the [agency's] delay."); *J.D. Hedin Const. Co. v. United States*, 456 F.2d 1315, 1330 (Ct. Cl. 1972) ("Interest paid on bank loans made because of financial stringency resulting from a breach by the Government of a contract between it and the borrower is not recoverable as an item of damage.").

Doyon does not allege that it is entitled to recover interest pursuant to a statutory waiver of sovereign immunity.[3]  Nor does Doyon allege that it is entitled to recover interest under any express provision of its contract with the Government.  Instead, the Government anticipates that Doyon will rely upon *Bell v. United States*, 404 F.2d 975 (Ct. Cl. 1968), to argue that the contract's changes clause waived the Government's sovereign immunity from an award of interest.  However, *Bell* would not permit Doyon to recover interest under its contract.

*Bell* "permitted a recovery of interest for a claim brought under the changes clause, [but] the relevant clause apparently did not explicitly exclude interest" in that case.  *Servidone Const.*, 19 Cl. Ct. at 383 n.10.  Here, in contrast, Doyon's contract with the Government contains such a provision:  as discussed above, the DFARS' pricing of contract modifications clause precludes Doyon from recovering interest on borrowings through an equitable adjustment.  *See* FAR § 31.205-20 ("[I]nterest on borrowings . . . are unallowable" costs.); DFARS § 52.243-7001 ("When costs are a factor in any price adjustment under this contract, the contract cost principles and procedures in FAR part 31 . . . apply.").  "Thus, this [action] is governed by *Servidone* and similar cases, rather than by *Bell* and its progeny, and [Doyon] is precluded from recovering

---

[3]  Although Doyon cites the Contract Disputes Act of 1978 (CDA) as the basis for the Court's jurisdiction, Doyon does not rely upon the CDA for its entitlement to recovery of interest on borrowings in this action.  *See* Compl. ¶¶ 1, 5.  Nor could Doyon do so inasmuch as "[t]he CDA contains an explicit statutory grant for the collection of interest on a recovery under a claim," it "has no separate provision for recovery of interest on borrowings."  *Servidone Const.*, 931 F.2d at 863.

interest on borrowings as part of an equitable adjustment to its contract." *Tomahawk Const*, 1993 WL 325547; *see generally Servidone Const.*, 931 F.2d at 863; *Servidone Const.*, 19 Cl. Ct. at 383 & n.10.

Moreover, *Bell* did not address the Government's sovereign immunity from an award of interest, or how the changes clause is an "affirmative, clear-cut, [and] unambiguous" provision permitting interest. *United States v. Thayer-W. Point Hotel Co.*, 329 U.S. 585, 590 (1947). Succinctly stated, *Bell* "did not find the interest to be within [28 U.S.C. § 2516(a)'s] statutory exception for 'a contract expressly providing for payment thereof.'" *N.Y. Shipbuilding Co.*, ASBCA No. 16164, 83-1 BCA (CCH) ¶ 16534, 1983 WL 41922 (May 11, 1983) (opinion of Lane, A.J.) (alteration omitted). Thus, any suggestion from *Bell* that the changes clause effects a clear and unambiguous waiver of sovereign immunity from an award of interest represents, at most, dicta. *See United States v. Wade*, 152 F.3d 969, 973 (D.C. Cir. 1998) ("Because that issue was not before the court, its overly broad language would be *obiter dicta* and not entitled to deference."); *Lawson v. United States*, 176 F.2d 49, 51 (D.C. Cir. 1949) (dicta includes an "opinion of a judge which does not embody the resolution or determination of the court, and made without argument or full consideration of the point").[4]

Instead, the *Bell* decision turned upon a purported "Department of Defense . . . policy to allow interest on borrowings." 404 F.2d at 984; *see Mar-Pak Corp. v. United States*, 203 Ct. Cl. 718, 720 (1973) ("In *Bell* we applied a DOD policy allowing interest as part of equitable

---

[4]   In passing, *Bell* states that 28 U.S.C. § 2516(a) and its general prohibition of interest on a claim are "not in conflict" with the court's decision. 404 F.2d at 984 & n.10; *see Tomahawk Const.*, 1993 WL 325547 ("In *Bell*, the Court of Claims simply determined that the allowance of interest on borrowings as a cost under an equitable adjustment was not in conflict with 28 U.S.C. sec. 2516(a) (1964) or the decisions which implemented that Congressional policy.").

adjustments allowable where contractor actually paid the interest because of Government delay in payment.").[5]  "But policy, no matter how compelling, is insufficient, standing alone, to waive [sovereign] immunity . . . .  Courts lack the power to award interest against the United States on the basis of what they think is or is not sound policy."  *Shaw*, 478 U.S. at 321.  Moreover, that policy—Department of Defense Instruction No. 4105.11 dated November 23, 1954 (DODI 4105.11)—subsequently was reversed by Defense Procurement Circular No. 79 dated May 15, 1970 (DPC 79).  The irrelevance of the bygone policy found in DODI 4105.11 is well-summarized by the ASBCA in *Tomahawk Construction*:

> For many years, the Department of Defense, as a matter of policy, had denied interest as a cost under an equitable adjustment.[6]  The Department, however, altered its policy in November of 1954 to

---

[5]  *Bell* referred to Department of Defense Instruction No. 4105.11 dated November 23, 1954 (DODI 4105.11) and cited the decision of the Armed Services Board of Contract Appeals (ASBCA) in *Kaman Aircraft Corp.*, ASBCA No. 10141, 66-1 BCA (CCH) ¶ 5581, 1966 WL 419 (May 18, 1966).  *See Bell*, 404 F.2d at 984 ("In November 1954, . . . the Department of Defense—which had previously, as a matter of policy, denied interest as a cost under an equitable adjustment—changed its policy to allow interest on borrowings, as part of equitable adjustments under fixed-price contracts.").  *Kaman Aircraft*, in turn, discussed DODI 4105.11 and the ASBCA's prior decision in *Wichita Engineering Co.*, ASBCA No. 2522, 1955 WL 8899 (Dec. 16, 1955).  *See Kaman Aircraft*, 1966 WL 419 ("In *Wichita Engineering* . . . , decided in 1955, the Board, stating that previous decisions had been based on policy set out in departmental regulations which had been changed by DOD Instruction No. 4105.11, 23 November 1954, held that interest could be included in the G&A pool if allocable, reasonable and necessary.").  And *Wichita Engineering* stated that in "[t]he current policy of the Army (as set forth in Army Procurement Procedure, paragraph 7–152, and in Department of Defense Instruction No. 4105.11 dated 23 November 1954, which applies to the administration of all 'Price Redetermination' articles," the Board saw "nothing . . . that requires that interest be 'disallowed', or permits it to be 'disallowed', merely because it is interest." 1955 WL 8899.

[6]  "Prior to 1955"—*i.e.*, before the issuance of DODI 4105.11—"interest was held to be unallowable."  *Kaman Aircraft*, 1966 WL 419; *see Bell*, 404 F.2d at 984 ("[T]he Department of Defense . . . had previously, as a matter of policy, denied interest as a cost under an equitable adjustment . . . ."); *Rainier, Inc.*, ABCA No. 1733, 4 CCF (CCH) ¶ 60,519 (June 14, 1948) (attached as Exhibit D) ("Under the Procurement Regulations, interest cannot be considered as a cost in negotiating price." (citation omitted)).

allow interest on borrowings, as part of equitable adjustments under fixed-price contracts.[7]   Based upon the Department's change in policy, [the ASBCA] began allowing such costs in certain cases. The Court of Claims subsequently held in its 1966 *Bell* decision that the Board's practice regarding recovery of interest on borrowings, which was by then long-standing, was allowable.

During 1970, the Department of Defense again altered its policy concerning interest on borrowings by making its standard cost principles applicable not only to determination of allowable costs under cost[-]reimbursement contracts, but to the pricing of all equitable adjustments under fixed-price contracts through the inclusion of a Pricing of Adjustments clause in its fixed-price contracts.[8]   The Department's cost principles expressly provided that interest on borrowings, however represented, was not allowable.  Based upon the Department's 1970 change in policy, *i.e.*, inclusion in contracts of the Pricing of Adjustments clause, this Board subsequently held on various occasions that a contractor could not recover interest on borrowings as part of an equitable adjustment.

*Tomahawk Const.*, 1993 WL 325547 (citations omitted) (footnotes added) (internal quotation marks omitted).

---

[7]   Specifically, DODI 4105.11 "cancel[led] that portion of [the] Munitions Board memorandum dated 15 November 1949 . . . wherein it is provided that in negotiating prices under fixed-price contracts, the contract cost principles, as set forth in Section XV of [the Armed Services Procurement Regulation (ASPR)], may be used."  Ex. E § II; *see N.Y. Shipbuilding*, 1983 WL 41922 ("The policy change . . . was simply the elimination of a regulation which had made the cost principles, including unallowability of interest, applicable as a guide in price redeterminations.").

[8]   Specifically, DPC 79 "ma[d]e mandatory the use of Section XV, Part 2, in the pricing of fixed price contracts."  Ex. F at 1.  DPC 79 also added a "new clause, Pricing of Adjustments," that would "become a mandatory clause for inclusion in all contract types enumerated in ASPR Section VII other than cost type contracts," and which provided:  "When costs are a factor in any determination of a contract price adjustment pursuant to the 'Changes' clause or any other provision of this contract, such costs shall be in accordance with Section XV of the Armed Services Procurement Regulation as in effect on the date of this contract."  *Id.* at 1, 11; *see N.Y. Shipbuilding*, 1983 WL 41922 (DODI 4105.11 was "reversed [in] 1970 when DOD issued a policy change in the form of a new contract clause," which "reinstate[d] the pre-1954 applicability of the cost principles, including the unallowability of interest.").

Thus, even if *Bell* were on all fours with Doyon's contract with the Government—which it is not—it would appear that *Bell* is no longer binding precedent because DODI 4105.11 has been cancelled.  *See Easter v. United States*, 575 F.3d 1332, 1337 (Fed. Cir. 2009) (An "intervening event—such as a statutory or regulatory change"—may obviate the binding effect of a decision.); *cf. Wichita Eng'g*, 1955 WL 8899 ("[T]o the extent that the decision in *Rainier*[, 4 CCF (CCH) ¶ 60,519 (Ex. D),] was based upon policy as set forth in procurement regulations, it can no longer be relied upon to automatically exclude the allowance of interest" because "[w]e find no prohibition against the inclusion of interest as a cost . . . in current regulations.").  Indeed, while the United States Court of Appeals for the Federal Circuit has cited *Bell* in at least two interest cases, it does not appear to have awarded interest through the changes clause in either of those decisions.  *See Energy Nw.*, 641 F.3d at 1310–13 ("revers[ing] the award of interest" although the Federal Circuit "has, on occasion, held the government liable for interest"); *Gevyn Const. Corp. v. United States*, 827 F.2d 752, 753 (Fed. Cir. 1987) ("The Claims Court held that Gevyn was not entitled to recover 'imputed' interest on equity capital used to finance extra work . . . and that Gevyn's subcontractor . . . was not entitled to recover interest on funds allegedly borrowed to finance extra work on the same project.  We affirm.").  Consistent with the conclusion that *Bell* is no longer binding precedent following the promulgation of DPC 79, the ASBCA has "subsequently held on various occasions that a contractor could not recover interest on borrowings as part of an equitable adjustment."  *Tomahawk Const.*, 1993 WL 325547 (citing cases).

In any event, the contract and claim at issue in *Bell* may be readily distinguished on their facts.  *Bell* (and the authorities that it relied upon) considered fixed-price contracts.  *See* 404 F.2d at 192 ("The contract . . . called for the manufacture of 62,552 bomb parachutes at a price of

$67.628 per unit or a total contract price of $4,230,266.60."); *Kaman Aircraft*, 1966 WL 419

(considering "fixed-price incentive contracts"); *Wichita Eng'g*, 1955 WL 8899 (considering "a

fixed-price contract with a provision for redetermination of price"); Ex. E § III (DODI 4105.11 is

"applicable to all price revision proceedings under fixed-price contracts providing for the

redetermination of price.").  In contrast, Doyon's contract with the Government "is a regulated

tariff rate utility service contract, subject to the provisions of FAR Part 41—*Acquisition of Utility*

*Services*."  Ex. A at 5; *see id.* § B.2.3 ("This is a Regulated Tariff Rate utility services

contract.").  Under such a contract, the contractor and the Government agree that services will be

furnished in accordance with the tariff rates established by the regulatory body—not for a fixed

price.  *See* Ex. A § 52.241-7(a)(2) ("The Contractor agrees to continue furnishing service under

this contract in accordance with the amended tariff, and the Government agrees to pay for such

service at the higher or lower rates . . . ."); FAR § 52.241-7(a)(2) (same).  Further, the contractor

in *Bell* (as well as the contractors in *Kaman Aircraft* and *Wichita Engineering*) sought to recover

interest only as a component of other indirect costs within general and administrative expenses.

*See Bell*, 402 F.2d at 982–83 (seeking various overhead costs including increased labor costs,

additional supervisory salaries, travel expenses, and interest); *Kaman Aircraft*, 1966 WL 419

("[W]e restore the item of interest to appellant's submitted G&A costs and remand the matter to

the parties for renegotiation of the adjusted total contract costs . . . ."); *Wichita Eng'g*,

1955 WL 8899 ("[W]e cannot restore any part of the interest to the G & A pool," which also

sought salesmen salaries, advertising costs, and automobile expenses.).  In contrast, Doyon seeks

to recover only its direct costs of interest on borrowings of $178,096, and does not claim any

other general and administrative expenses or indirect overhead costs.  *See* Compl. ¶¶ 40, 43, 45–

47.

Accordingly, Doyon's claim for interest on borrowings remains barred by sovereign immunity because the Government has not affirmatively and unambiguously permitted an award of interest under these circumstances, whether through the contract changes clause or otherwise.

III.   **Doyon May Not Recover Interest Because Its Change Theory Fails To State A Claim, And Its Constructive Change Theory Lacks Jurisdiction And Fails To State A Claim**

Even if Doyon's claim for interest on borrowings were allowable, and its claim for interest *qua* interest were not barred by sovereign immunity, Doyon still could not state a claim based upon an actual change. *See* Compl. ¶¶ 45–46. Similarly, the Court lacks jurisdiction over, and Doyon fails to state a claim based upon, a constructive change. *See* Compl. ¶ 47.

A.   Doyon's Change Claim Must Be Dismissed

Doyon's claim that it is entitled to recover interest on borrowings based upon the supplemental agreements permitting construction of the LFG power plant and reimbursement of the LFG costs fails to state a claim upon which relief can be granted because the contract's changes clause applies only to unilateral change orders, not supplemental agreements.

The contract's changes clause provides:

> (a) *The Contracting Officer may at any time, by written order*, and without notice to the sureties, if any, make changes within the general scope of this contract in any one or more of the following:
> (1) Description of services to be performed.
> (2) Time of performance (*i.e.*, hours of the day, days of the week, etc.).
> (3) Place of performance of the services.
> (b) If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this contract, whether or not changed by the order, the Contracting Officer shall make an equitable adjustment in the contract price, the delivery schedule, or both, and shall modify the contract.
> (c) The Contractor must assert its right to an adjustment under this clause within 30 days from the date of receipt of the *written order*. However, if the Contracting Officer decides that the facts justify it, the Contracting Officer may receive and act upon a proposal submitted before final payment of the contract.

(d) If the Contractor's proposal includes the cost of property made obsolete or excess by the change, the Contracting Officer shall have the right to prescribe the manner of the disposition of the property.

(e) Failure to agree to any adjustment shall be a dispute under the Disputes clause.  However, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed.

FAR § 52.243-1 Alt. I (emphasis added).

Thus, by its terms, the changes clause applies only to a "written order" issued unilaterally by the contracting officer, and does not permit a contractor to receive an equitable adjustment for a supplemental agreement accomplished by the mutual action of the parties.  FAR § 52.243-1 Alt. I. (a), (c); *see Cygnus Corp. v. United States*, 63 Fed. Cl. 150, 156 (2004) (While "[a]n equitable adjustment to a contract may be appropriate when the contracting officer takes action under the Changes . . . clause[] of the FAR . . . [t]he FAR . . . does not grant authority to a contracting officer to make an equitable adjustment in instances where the government and the contractor execute a bilateral modification.").  In other words, "the wording of the 'changes' clause does not contemplate a proposal by the contractor and an acceptance by the Government. Rather it vests the Government with the unilateral right to order changes, with the concomitant obligation to equitably adjust the contract price concurrently with the change it has ordered." *Purvis v. United States*, No. 207-68, 1980 WL 20824, at *7 n.27 (Ct. Cl. June 30, 1980); *see Envtl. Tectonics Corp. v. United States*, 72 Fed. Cl. 290, 297 (2006) ("FAR 52.243–1 . . . authoriz[es] the Contracting Officer to make unilateral changes to the scope of a fixed-price contract.").  This interpretation of the changes clause is further supported by the FAR's definition of a change order as "a written order, signed by the contracting officer, directing the contractor to make a change that the Changes clause authorizes the contracting officer to order *without the contractor's consent*," and of a supplemental agreement as "contract modification that is accomplished by the *mutual action of the parties*."  FAR § 2.101 (emphasis added).

14

The conclusion that the changes clause cannot provide interest for supplemental agreements is reinforced by both law and logic.  As a matter of law, as discussed above, potential waivers of sovereign immunity "must [be] construe[d] . . . strictly in favor of the sovereign," *Shaw*, 478 U.S. at 318, and to permit the award of interest a contract "provision must be affirmative, clear-cut, [and] unambiguous," *Thayer-W. Point Hotel*, 329 U.S. at 590.  The changes clause fails to rise to this strict standard, especially as applied to supplemental agreements.  As a matter of logic, a contractor executing a supplemental agreement has the opportunity to negotiate and receive extra payment for any increased costs of performance; he should not be permitted to "double-dip" by requesting additional compensation later.  *See Cygnus*, 63 Fed. Cl. at 156–57 ("Cygnus cites no authority for its counter-intuitive proposition that the government should be required to make a contractor whole for changes to a contract agreed to by the contractor.").

Here, the two contract modifications that Doyon points to—for construction of the LFG power plant and reimbursement of the LFG costs—were both supplemental agreements executed by Doyon and the Government, not unilateral change orders imposed by the contracting officer.  Accordingly, Doyon may not rely upon the changes clause as a basis to receive interest.

B.    Doyon's Constructive Change Claim Must Be Dismissed

The Court lacks subject matter jurisdiction over Doyon's alternative claim that it is entitled to recover interest on borrowings because the contracting officer constructively changed its contract by requiring Doyon to utilize a debt facility.  In addition, Doyon's constructive change claim fails to state a claim upon which relief can be granted.

The Court lacks subject matter jurisdiction over Doyon's constructive change claim because Doyon did not submit this claim to the contracting officer.  For the Court to exercise jurisdiction, "*[e]ach claim* by a contractor against the Federal Government relating to a contract

15

shall be submitted to the contracting officer for a decision."  41 U.S.C. § 7103(a)(1) (emphasis added).  Thus, "a contractor . . . may not raise any *new* claims not presented and certified to the contracting officer" in this Court.  *Santa Fe Engineers, Inc. v. United States*, 818 F.2d 856, 858 (Fed. Cir. 1987).  Here, Doyon submitted only its *actual* change claims, based upon the supplemental agreements permitting construction of the LFG power plant and reimbursement of the LFG costs, to the contracting officer.  *See* Ex. B at 6 ("The Government's approval of the construction of the LFG facility (and subsequent consumption of electricity generated by the facility) was a change to the services to be performed by [Doyon] under the Contract . . . .").  However, Doyon failed to submit its separate, *constructive* change claim that Doyon was "knowingly require[ed] . . . [to] make use of a debt facility in order to purchase LFG" to the contracting officer.  Compl. ¶ 47.  "A constructive change occurs where a contractor performs work beyond the contract requirements without a formal order, either by an informal order or due to the fault of the Government."  *Info. Sys. & Networks, Corp. v. United States*, 81 Fed. Cl. 740, 746 (2008).  Thus, Doyon's actual and constructive change "claims differ in both the factual basis"—*i.e.*, whether the contracting officer required Doyon to use the debt facility—"and the proof required"—*i.e.*, whether an informal order or Government fault forced Doyon to do extra work.  *AAB Joint Venture v. United States*, 75 Fed. Cl. 414, 423 (2007).

Doyon's constructive change claim also fails to state a claim.  "[F]or there to be a constructive change, the contractor must truly be *required* by the government to perform work beyond the contract requirements—the contractor cannot recover if it unilaterally determines that a particular course of performance is preferable."  *Info. Sys. & Networks*, 81 Fed. Cl. at 746; *see Singer Co. Librascope Div. v. United States*, 568 F.2d 695, 701 (Ct. Cl. 1977) ("[T]he Government [must have] directed plaintiff to take the step it did.").  Doyon alleges that "the

Contracting Officer . . . knowingly require[ed] that [Doyon] make use of a debt facility in order to purchase LFG."  Compl. ¶ 47.  However, that allegation is "conclusory" and should be rejected by the Court.  *Iqbal*, 556 U.S. at 681.  In contrast, Doyon's well-pled facts merely allege that Doyon "notified the Contracting Officer that the failure to pass-through the LFG costs was forcing [Doyon] to borrow money through a debt facility to keep its operations funded."  Compl. ¶ 30.  This factual allegation does not properly plead that Doyon was required to take that action.

Accordingly, Doyon's constructive change claim must be dismissed, either for lack of subject matter jurisdiction, or for failure to state a claim upon which relief can be granted.

CONCLUSION

For these reasons, we respectfully request that the Court dismiss the complaint for lack of

subject matter jurisdiction or for failure to state a claim upon which relief can be granted.

                                            Respectfully submitted,

                                            JOSEPH H. HUNT
                                            Assistant Attorney General

                                            ROBERT E. KIRSCHMAN, JR.
                                            Director

                                            s/Steven J. Gillingham
                                            STEVEN J. GILLINGHAM
                                            Assistant Director

OF COUNSEL:                                 s/Steven C. Hough
                                            STEVEN C. HOUGH
BRANDON COGSWELL                            Trial Attorney
Senior Counsel                              Commercial Litigation Branch
DLA Counsel – Energy                        Civil Division
8725 John J. Kingman Road, Suite 1565       United States Department of Justice
Ft. Belvoir, VA  22060                      PO Box 480
                                            Ben Franklin Station
                                            Washington, DC  20044
                                            Telephone: (202) 507-6030
                                            Facsimile:  (202) 305-7644
                                            steven.c.hough@usdoj.gov

September 6, 2019                           Attorneys for Defendant